HOLLY DEVELOPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42771, 52661. Promulgated December 24, 1935.

*Claude I. Parker, Esq., John B. Milliken, Esq., George H. Koster, Esq.,* and *L. A. Luce, Esq.,* for the petitioner.

*Elden McFarland, Esq.,* for the respondent.

780

**OPINION.**

LEECH: The various issues will be discussed in the order in which they have been stated.

## I.

For the year 1923 petitioner claimed depletion and depreciation in the respective amounts of $422,571.71 and $107,024.47. The respondent has allowed these items in the respective amounts of $63,221.15 and $60,563.04. It is stated on brief by counsel for both parties that the petitioner claimed these deductions on the basis of fair market value as of January 24, 1923, which, it claims, was the cost of the property to it. On the other hand respondent has based his computation on the cost of the property to Sinsheimer.

The petitioner had no assets at the time it issued all its stock to Sinsheimer and his associates in exchange for $169,500 and the contracts between Sinsheimer and Argonaut. Thus, since this issue is to be determined under the Revenue Act of 1921, it is clear that the cost of petitioner's stock was $169,500 plus the fair market value of the contracts paid in for the stock. *Ben T. Wright, Inc.,* 12 B. T. A. 1149; *Fifth Street Building,* 24 B. T. A. 876; *Monrovia Oil Co.,* 28 B. T. A. 335. This cost furnishes the basis for the computation of both depletion and depreciation. At this point counsel for respondent argues

that since we can not determine what the fair market value of the assets which were subject to depletion and depreciation was, the petitioner has failed. We do not think that the respondent is entitled to make this contention on this record. He has stipulated that if we find that the petitioner is entitled to use as a basis for computing depreciation and depletion deductions, the fair market value on the date of the acquisition of the assets acquired from Sinsheimer, then petitioner is entitled to deduct the following amounts: depreciation, $44,444.97, and depletion, $164,783.62. No evidence has been introduced to show what these values were. But, on the present record, in our judgment, we are not required to determine what they were. It was evidently for the purpose of eliminating the necessity of such evidence by limiting this phase of the controversy to the question of whether the proper basis was cost to Sinsheimer or to the petitioner, that the respondent has stipulated that if the basis is the fair market value of the property on the date of acquisition (cost to the petitioner), then the deductions should be allowed in the specified amounts. We have determined that issue as submitted. We have found that such is the proper basis. Therefore, the petitioner is entitled to the stipulated deductions.

## II.

It is stipulated that the $116,876.50 received by petitioner in 1923 on the loan made to Argonaut by Sinsheimer, the collection of which was assigned by him to petitioner, has been included by the respondent in the petitioner's income for that year. Reference is made in the stipulation to the deficiency notice. That notice discloses that the above sum was not added to the petitioner's income by the respondent. The deficiency notice states that the information at hand discloses that the loan of $130,000 was made by Sinsheimer to Argonaut for the purpose of liquidating certain indebtedness of the latter and was made in accordance with the agreement between Argonaut and Sinsheimer. Further, it there appears that under the agreement the loan was to be paid out of earnings of the property acquired from Argonaut by Sinsheimer and subsequently transferred to the petitioner, and that, since no part of such earnings accrued to the credit of Argonaut, it was held that the loan, in reality, represented a part of the cost of the property. From this we deduce that the petitioner has returned the $116,876.50 as income and now seeks to have that item eliminated. Thus, the question presented is whether that sum of money is a part of the gross income of the petitioner.

Argonaut owned certain oil, gas, and mineral leases, subject to the payment of specific royalties. It assigned by contract all its title, in those leases, to Sinsheimer. He assumed Argonaut's royalty liability to the original lessors, agreed to repay his $130,000 loan to Argonaut, if possible, from the proceeds of the oil, and, after certain deductions, to pay to Argonaut, in addition, $6,000 per month from the proceeds of the oil. This contract was assigned by Sinsheimer to petitioner, which became subrogated, thereby, to Sinsheimer's rights, including the collection of the loan. This issue has to do with that portion of the oil proceeds petitioner collected and applied under that assigned contract to the repayment of Argonaut's obligation to Sinsheimer, assigned to petitioner. The fact that this portion of the oil proceeds was retained by petitioner as a credit on Argonaut's debt of $130,000 to Sinsheimer, now owned by petitioner, is not material here. The present picture, for tax purposes, is the same as though Argonaut's debt was owed to another than petitioner, and petitioner had paid the portion of the oil proceeds, allocable to that debt, to Argonaut or, upon Argonaut's order, to its creditor direct. Such payments would have been in the nature of an overriding royalty—a part of the cost of the leases to petitioner which it bought from Sinsheimer. They would not lose that character because of the use to which Argonaut put them. Nor do they lose that character here merely because petitioner, which pays the overriding royalty, happens to be Argonaut's creditor, to which they are paid by petitioner's retaining and crediting them to Argonaut's loan account.

Thus, we think the payment of this assumed obligation of Argonaut's to Sinsheimer was the same, for present purposes, as the payment of an overriding royalty to Argonaut on the assigned leases. Such royalty would have been taxable income to Sinsheimer, and, a fortiori, was so to his assignee, petitioner.

As was stated by the Circuit Court of Appeals for the Eight Circuit, in affirming *Comar Oil Co.*, 24 B. T. A. 688:

We think the statute makes plain distinction between rentals or other payments for the continued use or possession of property to which the taxpayer has not taken title or in which it has no equity on the one hand, and rentals or other payments for the continued use or possession of property to which the taxpayer has taken title or in which it has an equity on the other hand. The former rentals are deductible; the latter are not.

\* \* \* \* \* \* \*

In the case at bar, it is clear that title to the property was taken by the petitioner.

It follows that the presently disputed amounts were likewise so taxable to petitioner. *Consolidated Royalty Oil Co.*, 31 B. T. A. 107.

## III.

Upon authority of those last cited cases, we are also of opinion that all of the payments on account of the $120,000 were merely overriding royalties and are taxable income to the petitioner. The fact that, in 1924 in settlement of its controversy with Argonaut, the petitioner paid Argonaut the sum of $26,413.44 in cash, does not alter the situation in so far as the question involved here is concerned. At that time the petitioner was in arrears in payments on account of these overriding royalties in the sum of $2,413.44. Obviously, from what has been said, as such royalties it was taxable income to petitioner. The difference between the two latter amounts was in the same category as the loan of $130,000 to Argonaut involved in issue II and, upon the same reasoning and authorities relied upon there, was also taxable as income to petitioner.

## IV.

This issue is resolved in favor of the respondent on the authority of *Helvering* v. *Twin Bell Oil Syndicate*, 293 U. S. 312.

*Judgment will be entered under Rule 50.*